UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLANTIS FINANCIAL SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL WINDING,<br><br>Defendant. | Case No. 25-cv-02907-PCP<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

Plaintiff Stellantis Financial Services, Inc. filed this action against defendant Michael Winding to recover amounts owed to Stellantis by third party WindingMakia Automotive Group II, LLC and guaranteed by Winding. Because Winding has not appeared in this action, the Clerk of Court previously entered default against Winding. Now before the Court is Stellantis's motion for default judgment. For the following reasons, the Court grants default judgment against Winding.

## BACKGROUND

For the purposes of default judgment, the factual allegations in a complaint are accepted as true except for those related to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiff Stellantis is a Texas corporation. Defendant Winding is, according to the complaint, a resident of California.

In September 2023, Stellantis and WindingMakia executed a Master Loan and Security Agreement, under which Stellantis agreed to provide WindingMakia with a floorplan loan to allow WindingMakia to purchase inventory for display and sale at its automotive lot in Pennsylvania. The agreement permitted WindingMakia to draw up to $5 million in total advances from

Stellantis, which WindingMakia agreed to repay and in exchange for which Stellantis received a security interest in WindingMakia's inventory and other assets. In the event that WindingMakia defaulted, the agreement authorized Stellantis to pursue remedies including repossession of its collateral for public or private sale. The agreement also entitled Stellantis to collect any attorneys' fees incurred in enforcing its rights under the agreement. Default under the agreement included a failure by WindingMakia to make payments due to other creditors, WindingMakia becoming insolvent, a material adverse change in the financial condition of WindingMakia or any of its guarantors, or a reasonable determination by Stellantis of its insecurity with regard to the obligations under the agreement.

Soon after executing the agreement, and in connection therewith, defendant Winding executed a continuing guaranty in which he agreed to guarantee the prompt and punctual payment of WindingMakia's obligations to Stellantis when they became due. Winding agreed to make payments under the guaranty upon Stellantis's request, even if Stellantis had not attempted to collect the amounts due from WindingMakia or another guarantor. Winding also agreed that he would have primary liability under the guaranty and would be jointly and severally liable with WindingMakia for its obligations to Stellantis. Further, Winding waived the right to require Stellantis to take action against anyone else obligated under the agreement, waived any other defenses against enforcement of the guaranty, and agreed to provide notice of any default by WindingMakia. The guaranty also provided that Stellantis had the right to sell collateral under the agreement without objection by Winding. The guaranty is continuing and unlimited in either duration or amount.

In summer 2024, WindingMakia failed to make required payments on its obligations to Stellantis. Stellantis alleges that this constituted a default under the agreement, as it left Stellantis insecure and constituted a material adverse change in WindingMakia's financial condition. Stellantis notified WindingMakia of its default, and WindingMakia agreed to voluntarily surrender the collateral that it had pledged to Stellantis to secure the agreement. Stellantis subsequently sold the collateral "in a commercially reasonable manner," as required under the agreement. The proceeds of the sale did not, however, completely cover WindingMakia's obligations to Stellantis.

According to Stellantis, "a deficiency remains in the debt owed by WindingMakia … and guaranteed by Winding."

Stellantis notified Winding of WindingMakia's default under the agreement and demanded that he pay for the remaining amounts due to Stellantis after sale of the collateral. Stellantis's Deputy Chief Executive Officer and Chief Operating Officer of Commercial Lending attests that, as of September 2, 2025, the amount of the deficiency due under the guaranty is $505,104.14. "[T]his amount consists of the principal amount owed $416,331.16, accrued late fees of $25,027.91, the costs of Retail Unwinding in the amount of $27,262.92, accrued interest from February, 2025 through July, 2025, and attorney's fees in the amount of $23,238.50."

Stellantis filed this suit against Winding on March 28, 2025, seeking to recover the remaining amounts owed by WindingMakia and guaranteed by Winding, as well as Stellantis's costs of collection and pre- and post-judgment interest. Though the complaint alleges that Winding resides and could be served in California, Stellantis served a person named "Michael Winding" in Missouri City, Texas. The certificate of service, dated June 2, 2025, provided no information to identify "Michael Winding" apart from his name and the Texas address at which he was served. Winding has not appeared in this action.

On July 14, 2025, the Clerk of the Court entered default against Winding. Stellantis then filed a motion for default judgment. The Court determined that it was "unable to enter default judgment" for two reasons. First, because "[n]either the certificate of service nor Stellantis's motion for default judgment offer[ed] any information or evidence showing that the 'Michael Winding' served in Texas [wa]s the same 'Michael Winding' named as a defendant in this action," the Court could not "conclude that defendant Winding ha[d] been served." Second, that Stellantis allegedly served Winding at a residential address in Texas suggested that Winding might be a citizen of Texas for jurisdictional purposes. If so, that fact would destroy this Court's diversity jurisdiction over Stellantis's state-law claims because Stellantis is also a citizen of Texas. The Court therefore deferred ruling on the motion for default judgment and ordered Stellantis to file "a supplementary brief and evidence demonstrating that it properly served defendant Winding and that the parties are completely diverse."

3

Stellantis timely filed a supplemental brief and a supporting declaration by Bryan Banks, Stellantis's Associate Director, Special Accounts. Stellantis explained that when Winding executed the guaranty, he submitted a personal financial statement identifying his primary residence at an address in California and identifying a home in Houston, Texas as a vacation home. Banks's declaration enclosed that personal financial statement as an exhibit. Stellantis and Banks also explained that, after repeatedly attempting to serve Winding at his primary residence in California, Stellantis learned from Winding's business partner at WindingMakia that he might be found at the address in Missouri City, Texas where Stellantis ultimately effected service. Stellantis then engaged a private investigator to locate Winding and, around the same time, heard from a business associate who had personally observed Winding at a Walmart near the Missouri City address provided by Winding's business partner. Only then did Stellantis serve Winding at that address.

## LEGAL STANDARD

Federal Rule 55(b)(2) allows a party "to apply to the court for a default judgment." The decision to enter a default judgment is entirely within the district court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining whether default judgment is proper:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a plaintiff seeks default against a non-appearing defendant, the court "should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court must also assess of the adequacy of service of process on the non-appearing party. *See, e.g.*, *Innovative Sports Management, Inc. v. Nunez*, No. 22-cv-07136-JSC, 2023 WL 4551069, at *2 (N.D. Cal. July 13, 2023).

4

**DISCUSSION**

**I.    Jurisdiction and Service of Process**

The Court has original subject-matter jurisdiction over this lawsuit because, though Stellantis's claims arise under state law, Stellantis has established that the parties are completely diverse and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. As noted above, Stellantis is a citizen of Texas. *See Kunts v. Lamar Corp.*, 385 F.3d 1177, 1181–82 (9th Cir. 2004) (explaining that a corporation is "a citizen of any State by which it has been incorporated" (quoting 28 U.S.C. § 1332(c)(1)). And pursuant to this Court's previous order, Stellantis has offered evidence establishing that Winding is a citizen of California. An individual is a citizen of the state where he "resides with the intention to remain." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). The record demonstrates that, at least when Winding executed the guaranty with Stellantis, he considered his California home to be his primary residence. In other words, he resided in California with the intent to remain here. While Winding may now reside in Texas, that does not alone determine his citizenship for diversity jurisdiction if he intends to return to California. *See id.* Nothing in the record suggests that Winding intends to remain in Texas. To the contrary, he previously indicated on a personal financial statement submitted to Stellantis that another residence in Texas was merely a "vacation home," strongly suggesting a *lack* of intent to remain in that state. *See Wasserman v. W.D. Smith Constr., Inc.*, No. CV 14-5705 PSG (SHX), 2014 WL 12696777, at *4 (C.D. Cal. Dec. 4, 2014) (holding that a plaintiff's extended summer residence at her vacation home in California did not impact her Florida domicile). The Court therefore concludes that the parties are completely diverse. Further, Stellantis seeks several hundred thousand dollars in damages, far exceeding the $75,000 amount-in-controversy threshold.

The Court also has personal jurisdiction over Winding. The guaranty executed by Winding provided that Winding "consents to the jurisdiction of the federal and state courts of the state in which [he] resides." As noted above, concurrent with his execution of the guaranty, Winding submitted a personal financial statement in which he identified his primary residence as a home in California. Winding therefore consented to this Court's jurisdiction for the purposes of claims

5

arising from the guaranty. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–1407 (9th Cir. 1994).

Stellantis has also demonstrated proper service upon Winding. Federal Rule of Civil Procedure 4(e)(1) provides that "an individual … may be served in … the United States by … delivering a copy of the summons and of the complaint to the individual personally." Stellantis personally served an individual named "Michael Winding" in Missouri City, Texas. Its supplemental brief and declaration show that this individual is almost certainly the same individual named as a defendant in this action. Defendant Winding owns another vacation home in Texas, suggesting that he frequently visits the state. His business partner specifically directed Stellantis to the address at which a "Michael Winding" was served. And Stellantis's associate reportedly observed Winding at a nearby Walmart. Service was therefore proper.

## II.  *Eitel* Factors

The *Eitel* factors support entering default judgment against Winding.

The first *Eitel* factor supports default judgment because without judgment, Stellantis will be left without a remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The second and third *Eitel* factors, which consider the merits of the claim and the sufficiency of the complaint, also favor entry of default judgment. Stellantis's complaint asserts a single claim against Winding for breach of the guaranty. "The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)). The allegations in the complaint establish each element. Stellantis alleges that (1) the parties entered into a contract, the guaranty; (2) Stellantis performed its obligations under the guaranty by issuing advances to WindingMakia pursuant to the agreement and later providing notice to Winding of WindingMakia's default; (3) Winding breached the guaranty by failing to pay the remaining amount owed by WindingMakia following sale of the collateral; and (4) Stellantis has suffered

6

damages in the form of unpaid debts as a result.

The fourth factor, the sum of money at stake, also favors default judgment. Stellantis requests over $500,000. This is a substantial sum, but it is "directly proportional" to the outstanding amount owed to Stellantis by WindingMakia, for which Winding is liable. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (affirming entry of default judgment and award of $1.48 million in damages where defendant sought "contractual damages directly proportional to [plaintiff's] breach of the contracts"). The fourth factor therefore slightly favors default judgment.

The fifth factor is neutral because it is impossible to know whether there will be a dispute concerning material facts given Winding's failure to appear in this action.

The sixth factor, excusable neglect, also supports default judgment because Winding has been properly served and therefore has notice of this action.

The seventh factor weighs against default judgment because the Federal Rules embrace a "strong policy" of deciding cases on the merits. *Eitel*, 782 F.2d at 1472. But where one party fails to litigate a case, it is impossible to decide a case on the merits. So this factor only very slightly weighs against default judgment.

In sum, the first, second, third, fourth, and sixth factors favor default judgment; the fifth is neutral; and the seventh weighs very slightly against default judgment. On balance, the *Eitel* factors support entering default judgment against Winding.

### III. Scope of Relief

Because Stellantis has shown that default judgment is appropriate, it is entitled to recover damages and attorney's fees and costs.

"Damages awarded to an injured party for breach of contract "seek to approximate the agreed-upon performance" and "put the plaintiff 'in as good a position as [it] would have occupied' if the defendant had not breached the contract. In other words, the plaintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 967–68 (2004). Here, had Winding performed his obligation under the guaranty, he would have paid Stellantis for the full

7

amount remaining of WindingMakia's debts after Stellantis sold the collateral. Stellantis is therefore entitled to recover that amount.

Stellantis asserts that these damages total $468,621.99. A plaintiff moving for default judgment must prove its damages with admissible evidence, which may take the form of a declaration. *See NewGen, LLC*, 840 F.3d at 617. As evidence of its damages, Stellantis provides a declaration by Alberto Grippo, its Deputy Chief Executive Officer and Chief Operating Officer of Commercial Lending. The declaration states that "Plaintiff's accrued damages … consist[] of the principal amount owed $416,331.16, accrued late fees of $25,027.91, [and] the costs of Retail Unwinding in the amount of $27,262.92." *Id.* ¶ 26. The declaration thus supports Stellantis's damages request.

Stellantis also requests prejudgment interest of $13,243.65, covering the six-month period from February to July 2025. That represents roughly 2.83% of the principal damages amount, or an adjusted annual interest rate of roughly 5.66%. California law provides that prejudgment interest on a breach of contract claim begins to run, at an annual rate of 10%, from the date of injury if the damages are certain, but from no earlier than the date of the complaint if the damages are uncertain. Cal. Civ. Code §§ 3287(a), 3289. "Typically, damages are deemed certain or capable of being made certain when 'there is essentially no dispute … concerning the basis of computation of damages'" or where "if the amount can be determined by reference to a fixed standard, such as … a rescinded sales contract." *W. Air Charter, Inc. v. Schembari*, No. CV-17420, 2019 WL 6998789, at *2 (C.D. Cal. Mar. 7, 2019) (first quoting *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 234 Cal. App. 3d 1154 (1991); and then quoting *Marine Terminals Corp v. Paceco, Inc.*, 145 Cal. App. 3d 991, 995–96 (1983)). Here, Stellantis's damages are certain because they can be determined by reference to the fixed amount owed by WindingMakia under the agreement, offset by the fixed amount Stellantis received from selling the collateral it repossessed. And that basis of computation is not subject to reasonable dispute. Stellantis is therefore entitled to damages from the date of its injury at an annual rate of 10%. Its claimed prejudgment interest of roughly 5.66%, starting one month before it filed this action, is within the proper range.

Stellantis also requests attorney's fees and costs in the amount of $23,337. But Stellantis seeks leave to move, after entry of default judgment, for an award of any additional attorney's fees and costs it incurred in bringing its motion for default judgment. Rather than bifurcate an award, the Court defers consideration of Stellantis's request for fees and costs and grants Stellantis leave to file a motion for attorney's fees and costs within 21 days of this order.

## CONCLUSION

For the foregoing reasons, Stellantis's motion for default judgment is GRANTED. The Court awards Stellantis $481,865.64 in damages, including $468,621.99 in breach-of-contract damages and $13,243.65 in prejudgment interest. Stellantis shall file its motion for attorneys' fees and costs within 21 days of this order.

**IT IS SO ORDERED.**

Dated: January 12, 2026

P. Casey Pitts
United States District Judge